Abigail J. Remore, Esq.
CHIESA SHAHINIAN & GIANTOMASI PC
11 Times Square, 34th Floor
New York, NY 10036
Telephone: 973.325.1500
Facsimile: 973.325.1501
Email: ajremore@csglaw.com
*Attorneys for Plaintiff Bush Baby Zamagate, Inc.*

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BUSH BABY ZAMAGATE, INC., <br><br> Plaintiff, <br><br> vs. <br><br> CHAPTER 4 CORP., D/B/A SUPREME, KEJUAN MUCHITA INC. and THE EXECUTORS OF THE ALBERT JACKSON JOHNSON ESTATE <br><br> Defendants. | Civil Action No.: <br><br> *Document Electronically Filed* <br><br> **COMPLAINT** <br><br> **Jury Trial Demanded** |

Plaintiff, Bush Baby Zamagate, Inc. ("Plaintiff") by and through its attorneys, for its complaint against defendants, Chapter 4 Corp., d/b/a Supreme ("Supreme"), Kejuan Muchita Inc. ("KMI") and The Executors of the Albert Jackson Johnson Estate (the "Johnson Estate," and, together with KMI, collectively, "Mobb Deep"),[1] alleges as follows:

**NATURE OF ACTION**

1.      This case arises out of Defendants' improper and illegal use of a nearly identical logo mark to Plaintiff's inherently distinctive, incontestable, and famous logo, both of which are depicted below.

---

[1] Supreme, KMI, and the Johnson Estate shall be referred to herein collectively as "Defendants" and each individually a "Defendant."

| Plaintiff's Mark | Defendants' Mark |
|---|---|
| |  |

Defendants' adoption and use of their knockoff logo over thirty-five years after Plaintiff commenced use, after Plaintiff's repeated prior objections, and in the face of Plaintiff's incontestable federal trademark registration is not just reckless and inexplicable – it is willful infringement and unfair competition.

2. Specifically, Plaintiff has used its logo since at least as early as 1987 in connection with musical recording goods, live musical performances, and related goods and services, including clothing goods such as shirts and hats. In June 2023, Supreme, a clothing and skateboarding lifestyle brand, as part of a collaboration with Mobb Deep, began using its logo on clothing goods, including t-shirts and hats. The similarities between the two marks, particularly when used on clothing, have confused and are confusing the media and consumers and are causing damage to Plaintiff's senior mark and brand.

3. This is not the first time that Plaintiff has objected to Mobb Deep's use of a logo substantially identical to Plaintiff's Mark. Twice, most recently in 2003, Plaintiff previously demanded that Mobb Deep cease use of its infringing logo, and Mobb Deep and its affiliates complied. In addition, immediately prior to the institution of this lawsuit, Plaintiff demanded that Defendants cease use of their infringing logo and provide an accounting to Plaintiff of sales of the infringing goods. Defendants refused to comply with those demands. Accordingly,

2

Plaintiff brings this action for trademark infringement, unfair competition and other relief arising under the trademark laws of the United States, specifically 15 U.S.C. § 1051 et seq. (hereinafter the "Lanham Act') and the laws of the State of New York.

## THE PARTIES

4. Plaintiff Bush Baby Zamagate, Inc. is an entity organized and existing under the laws of New York with an address in Tarrytown, NY.

5. Plaintiff is the owner of all intellectual property rights associated with the musical group Sick Of It All ("SOIA") that has been in existence since 1987.

6. Chapter 4 Corp., d/b/a Supreme is an entity organized and existing under the laws of New York with an address of 62 King Street, 3rd Floor, New York, NY 10014.

7. Kejuan Muchita Inc. is an entity organized and existing under the laws of New York with an address of 418 Broadway, Ste. R, Albany, NY 12207. Upon information and belief, the CEO of KMI, an individual by the name of Kejuan Muchita, resides in New York, NY.

8. The Executors of the Albert Jackson Johnson Estate has an address of c/o The Northstar Group, 240 West 35th Street, Suite 405, New York, NY 10001.

9. Kejuan Muchita (a/k/a Havoc) and Albert Jackson Johnson (a/k/a Prodigy) were the two members of the hip hop duo by the name of Mobb Deep, which was formed in New York City in 1991. Upon information and belief, KMI and the Jackson Estate are jointly responsible for all business and legal activities relating to Mobb Deep, including the acts complained of herein.

**JURISDICTION, VENUE AND STANDING**

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because Plaintiff's claims arise under the trademark laws of the United States, 15 U.S.C. § 1051 et seq. This Court also has supplemental jurisdiction over Plaintiff's claims that arise under the laws of the State of New York pursuant to 28 U.S.C. §§ 1338(b) and 1367.

11. This Court has personal jurisdiction over Defendants because: (i) Plaintiff's claims arise in this judicial district; (ii) the Defendants are located within this judicial district; and (iii) each party does business in this judicial district.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arise in this judicial district, each party does business in this judicial district, witnesses and evidence are located within this judicial district, and the acts complained of herein have taken place in this judicial district.

13. Plaintiff has standing to bring this action pursuant to 15 U.S.C. §§ 1114 and 1125(a) and the common laws of the State of New York.

**PLAINTIFF'S MARK**

14. Plaintiff is the owner of the well-known trademark and service mark ("Plaintiff's Mark"), which mark has been in use since 1987 in connection with SOIA's musical sound recordings, merchandise items (including clothing goods) and live performances ("Plaintiff's Goods and Services").

15. Plaintiff is the owner of incontestable United States Trademark Registration No. 2,866,578 ("Plaintiff's Registration") covering Plaintiff's Mark in International Class 25 for *t-shirts, baseball hats, shorts, sweatshirts, wristbands*. Printouts from the United States Patent and Trademark Office's ("USPTO") online databases of Plaintiff's Registration are attached hereto as **Exhibit A**.

16. Plaintiff's Mark is inherently distinctive for Plaintiff's Goods and Services.

17. Because SOIA and Plaintiff have used Plaintiff's Mark in commerce for decades, Plaintiff's Mark has also acquired secondary meaning.

18. By virtue of Plaintiff's extensive and continuous use of Plaintiff's Mark for thirty-five years, Plaintiff's Mark has come to be widely recognized by the public as identifying Plaintiff, SOIA, and Plaintiff's Goods and Services.

19. As a result of the foregoing, in addition to Federal trademark rights, Plaintiff has common law rights in and to Plaintiff's Mark in connection with Plaintiff's Goods and Services dating back at least as early as 1987.

20. Plaintiff, SOIA, and their predecessors-in-interest, affiliates, and licensees have invested a substantial amount of time, money, and other resources advertising, promoting, marketing, and publicizing Plaintiff's Goods and Services provided under Plaintiff's Mark. As a result of these substantial advertising, marketing, and promotional efforts, Plaintiff's Mark has acquired substantial consumer recognition and goodwill. Plaintiff's Mark has become an important source indicator that identifies the quality of Plaintiff's Goods and Services and SOIA as a whole. For all of the foregoing reasons, Plaintiff's Mark is an exceedingly valuable asset of Plaintiff.

**DEFENDANTS' INFRINGEMENT**

21. Over thirty-five years after Plaintiff's commencement and substantial exclusive use of Plaintiff's Mark, subsequent to Plaintiff's Mark acquiring public recognition as identifying and distinguishing Plaintiff's Goods and Services from those of others, following the USPTO's issuance of Plaintiff's Registration, following Plaintiff's Registration achieving incontestable status, and following Plaintiff's prior objections to Mobb Deep regarding use of an infringing logo, in June 2023, Defendants began using the nearly identical mark  (the "Infringing Mark") in the United States and internationally in connection with numerous types of clothing goods as part of a collaboration between Supreme and Mobb Deep.

22. The Infringing Mark is virtually identical to Plaintiff's Mark. A side-by-side comparison of the respective marks is set forth below.

| Plaintiff's Mark | Infringing Mark |

 

23. The Infringing Mark is displayed on clothing goods, including, but not limited to, shirts and hats, sold by Supreme.

24. The Infringing Mark is also displayed on Defendants' websites and in social media posts advertising the collaboration.

25. Upon information and belief, Defendants are also selling merchandise bearing the Infringing Mark via third party retailers, including numerous third party retailers that are affiliated with, authorized by, or controlled by Supreme.

26. Defendants' merchandise bearing the Infringing Mark is highly related and, in many cases, essentially identical to Plaintiff's Goods. Examples of the parties' respective goods are depicted below:

| Plaintiff's Items | Defendants' Items |
|---|---|
| (black long-sleeve shirt with white dragon graphic) | (black Supreme t-shirt with white dragon graphic) |
| (black beanie with white dragon logo) | (black snapback cap with white dragon logo) |

27. Defendants' goods and services provided under the Infringing Mark are directed toward the same class of consumers as Plaintiff's customers, such that Plaintiff and Defendants are unquestionably in competition with respect to their respective goods and services.

28. Defendants' use of the essentially identical Infringing Mark is likely to cause confusion, mistake, or deception as to the source or origin of Defendants' goods and services.

29. As a result of Defendants' use of the Infringing Mark in connection with goods that are identical to many of Plaintiff's Goods, consumers are likely to believe that Defendants' goods and services are provided by, sponsored by, endorsed by, approved by, licensed by, or in some other way legitimately connected to Plaintiff, which they are not.

30. At least twice in the past, Mobb Deep has been advised that its adoption and use of Defendants' Mark infringed Plaintiff's Mark. Upon information and belief, the first objection was made in or prior to 1997. Most recently, in 2003, counsel for Plaintiff sent a letter, a copy of which is attached hereto as **Exhibit B**, objecting to Mobb Deep's anticipated use of Defendants' Mark in connection with sound recordings that Mobb Deep produced. Upon information and belief, Mobb Deep is still represented by one of the recipients of the letter attached hereto as Exhibit B, L. Londell McMillan.

31. Third parties and media outlets have commented on the similarities between the marks. By way of example, but not limitation, HypeBeast.com stated that Defendant's Mark was "borrowed from hardcore punk band Sick of It All – who, like Mobb Deep, is from Queens, New York." A copy of that article is attached hereto as **Exhibit C**.

32. Defendants' acts complained of hereinabove are unlawful, willful, and knowingly performed with the intent and result of injuring Plaintiff.

33. Defendants' continued use, marketing, and promotion of the Infringing Mark, whether directly or through their third party affiliated sellers, is likely to cause confusion, mistake, or deception as to the source of Defendants' goods and services. As a result of Defendants' use of the essentially identical Infringing Mark in connection with goods and services that are identical or nearly identical to the goods and services Plaintiff provides, consumers are likely to believe that Defendants' goods and services are provided by, or sponsored by, or approved by, or licensed by, or affiliated with, or in some other way legitimately connected to Plaintiff, which they are not.

34. As a result of Defendants' conduct, Plaintiff and its brand has been seriously and irreparably harmed, and, unless this Court enjoins Defendants' wrongful acts, Plaintiff will continue to suffer irreparable harm for which it has no adequate remedy at law.

## COUNT I

### FEDERAL TRADEMARK INFRINGEMENT

35. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as if they were set forth in full herein.

36. Defendants, through the conduct described above, are providing in interstate commerce goods and services under a mark that is a colorable imitation of Plaintiff's registered mark, which is likely to cause confusion or mistake and/or to deceive in violation of the Lanham Act Section 32(1) (15 U.S.C. § 1114(1)).

37. Upon information and belief, Defendants have committed such acts of infringement willfully and with full knowledge of Plaintiff's prior use and registration of, and rights in and to, Plaintiff's Mark.

38. As a result of Defendants' acts of infringement, Plaintiff has suffered and will continue to suffer serious and irreparable harm for which there is no adequate remedy at law.

## COUNT II

### UNFAIR COMPETITION UNDER THE LANHAM ACT

39. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as if they were set forth in full herein.

40. Defendants, through the conduct described above, are providing goods and services under a mark that is a colorable imitation of Plaintiff's protectable mark, which is likely to cause confusion or mistake and/or to deceive in violation of the Lanham Act Section 43(a) (15 U.S.C. § 1125(a)).

41. Upon information and belief, Defendants have committed such acts of false designation of origin and false description and representation willfully and with full knowledge of Plaintiff's prior use and registration of, and common law rights in and to, Plaintiff's Mark.

42. As a result of Defendants' acts of unfair competition, Plaintiff has suffered and will continue to suffer serious and irreparable harm for which there is no adequate remedy at law.

## COUNT III

### COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

43. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as if they were set forth in full herein.

44. Plaintiff owns all right, title and interest in Plaintiff's Mark as described above, including all common law rights therein.

45. Defendants' aforesaid acts constitute infringement of Plaintiff's rights in Plaintiff's Mark and tend to falsely describe or represent that Defendants' goods and services are provided by, or sponsored by, or approved by, or endorsed by, or licensed by, or affiliated with, or in some other way legitimately connected to Plaintiff and are of the same character, nature, and quality as the goods provided by Plaintiff, thereby damaging Plaintiff's reputation.

46. Defendants' consumer-oriented conduct was and is directed at the public, was and is materially misleading to the public, has affected the public interest of New York, and has resulted in injury to consumers in New York.

47. Defendants' aforesaid acts constitute acts of trademark infringement and unfair competition against Plaintiff under the common law of the State of New York, which acts have been committed knowingly and willfully and have injured Plaintiff in its trade and business.

48. By reason of the aforesaid acts, Defendants have caused damage to Plaintiff and the goodwill associated with Plaintiff's Mark, as well as injury to the public.

49. As a result of Defendants' acts of unfair competition, Plaintiff has suffered and will continue to suffer serious and irreparable harm for which there is no adequate remedy at law.

## COUNT IV

### DILUTION IN VIOLATION OF NEW YORK GENERAL BUSINESS LAW

50. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as if they were set forth in full herein.

51. Plaintiff is the owner of Plaintiff's Mark.

52. Defendants have used, are using, and have caused others to use the confusingly similar Infringing Mark without Plaintiff's authorization.

53. Defendants' unauthorized uses of the Infringing Mark have impaired and damaged and are likely to impair and damage the distinctiveness of Plaintiff's Mark by causing the public to no longer associate the distinctive Plaintiff's Mark exclusively with Plaintiff.

54. Defendants' unauthorized use is also likely to tarnish the reputation of Plaintiff and the goodwill Plaintiff has developed in Plaintiff's Mark.

55. Defendants' conduct was and is knowing, deliberate, willful, and in bad faith and done with the intent to trade on the goodwill and reputation of Plaintiff and Plaintiff's Mark, to impair the distinctiveness of Plaintiff's Mark, and to deceive consumers into believing that Plaintiff is connected with Defendants' products.

56. Defendants' actions, as stated above, have caused and will continue to cause a likelihood of injury to Plaintiff's business reputation in violation of New York General Business Law § 360-l.

57. Unless enjoined by this Court, Defendants wrongful acts will continue and Plaintiff will continue to suffer irreparable harm for which it has no adequate remedy at law.

## COUNT V

### INJUNCTION

58. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as if they were set forth in full herein.

59. Plaintiff will be irreparably harmed if Defendants are not enjoined from using the Infringing Mark in connection with the provision of any goods and services.

60. Customers and potential customers of Plaintiff's and Defendants' goods and services will be confused if Defendants are not enjoined from using the Infringing Mark.

61. Plaintiff does not have an adequate remedy at law for Defendants' ongoing misconduct, and entry of an injunction will serve the public interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment in its favor and against Defendants as follows:

1. That Defendants and each of their officers, agents, servants, distributors, affiliates, employees, attorneys, members, and representatives and all those in privity or acting in concert with Defendants, and each of them, be permanently enjoined and restrained from, directly or indirectly:

(a) Using the Infringing Mark or any other mark or marks confusingly similar thereto, alone or in combination with other words, names, styles, titles, designs, or marks in connection with the provision of any goods and services;

(b) Using in any other way any other marks or designations so similar to the aforesaid Plaintiff's Mark as to be likely to cause confusion, mistake or deception;

(c) Falsely designating the origin, sponsorship, or affiliation of the Defendants' goods or services in any manner;

(d) Otherwise competing unfairly with Plaintiff in any manner;

(e) Using any words, names, styles, designs, titles, designations, or marks which create a likelihood of injury to the business reputation of Plaintiff and the goodwill associated therewith;

(f) Using any trade practices whatsoever including those complained of herein, which tend to unfairly compete with or injure Plaintiff's business and goodwill pertaining thereto;

(g)     Using any trade practices whatsoever including those complained of herein, which tend to deceive their intended audience; and

(h)     Continuing to perform in any manner whatsoever any of the acts complained of in this Complaint.

2.     That the Defendants be required to pay to Plaintiff compensatory damages for the injuries sustained by Plaintiff in consequence of the unlawful acts alleged herein and that such damages be trebled pursuant to 15 U.S.C. § 1117 because of the willful and unlawful acts as alleged herein.

3.     That the Defendants be required to account for and pay over to Plaintiff all gains, profits and advantages derived from the unlawful activities alleged herein.

4.     That Defendants be required to deliver for destruction all merchandise, stationery, signs, advertisements, promotional flyers, cards, brochures, promotional materials, and any other hard copy or written materials which bear the Infringing Mark or any other mark or marks confusingly similar thereto, alone or in combination with other words, names, styles, titles, designs, or marks, together with all plates, molds, matrices and other means and materials for making or reproducing the same.

5.     That Defendants be required to remove any and all online use of the Infringing Mark or any other mark or marks confusingly similar thereto, alone or in combination with other words, names, styles, titles, designs or marks, including via any and all of their websites, social media accounts or otherwise, and that Defendants be required to take steps necessary to remove any use of the Infringing Mark, or any other mark or marks confusingly similar thereto, alone or in combination with other words, names, styles, titles, designs or marks, that is associated with any of Defendants' advertised goods or services on any third party website or online source.

      6.      That the Defendants be required to pay to Plaintiff all of its litigation expenses, including but not limited to reasonable attorneys' fees and the costs of this action.

      7.      That Plaintiff be awarded such other and further relief as the Court may deem just and proper.

                                          CHIESA SHAHINIAN & GIANTOMASI PC
                                          11 Times Square, 34th Floor
                                          New York, NY 10036
                                          973.325.1500
                                          ajremore@csglaw.com
                                          *Attorneys for Plaintiff Bush Baby Zamagate, Inc.*

                                    By:    /s/ *Abigail J. Remore /*
                                                   ABIGAIL J. REMORE

Dated:  October 11, 2023
             New York, NY

## JURY DEMAND

Plaintiff demands trial by jury of all claims and defenses in this action so triable.

                                          CHIESA SHAHINIAN & GIANTOMASI PC
                                          11 Times Square, 34th Floor
                                          New York, NY 10036
                                          973.325.1500
                                          ajremore@csglaw.com
                                          *Attorneys for Plaintiff Bush Baby Zamagate, Inc.*

                                    By:    /s/ *Abigail J. Remore /*
                                                   ABIGAIL J. REMORE

Dated:  October 11, 2023
             New York, NY