Abigail J. Remore, Esq.
CHIESA SHAHINIAN & GIANTOMASI PC
11 Times Square, 34ᵗʰ Floor
New York, NY 10036
Telephone: 973.325.1500
Facsimile: 973.325.1501
Email: ajremore@csglaw.com
*Attorneys for Plaintiff Bush Baby Zamagate, Inc.*

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BUSH BABY ZAMAGATE, INC.,<br><br>               Plaintiff,<br><br>vs.<br><br>CHAPTER 4 CORP., D/B/A SUPREME,<br>KEJUAN MUCHITA INC. and THE<br>EXECUTORS OF THE ALBERT JACKSON<br>JOHNSON ESTATE<br><br>               Defendants. | Civil Action No.:<br><br>*Document Electronically Filed*<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff, Bush Baby Zamagate, Inc. ("Plaintiff") by and through its attorneys, for its complaint against defendants, Chapter 4 Corp., d/b/a Supreme ("Supreme"), Kejuan Muchita Inc. ("KMI") and The Executors of the Albert Jackson Johnson Estate (the "Johnson Estate," and, together with KMI, collectively, "Mobb Deep"),[1] alleges as follows:

**NATURE OF ACTION**

1.      This case arises out of Defendants' improper and illegal use of a nearly identical logo mark to Plaintiff's inherently distinctive, incontestable, and famous logo, both of which are depicted below.

---

[1] Supreme, KMI, and the Johnson Estate shall be referred to herein collectively as "Defendants" and each individually a "Defendant."

Plaintiff's Mark                         Defendants' Mark



Defendants' adoption and use of their knockoff logo over thirty-five years after Plaintiff

commenced use, after Plaintiff's repeated prior objections, and in the face of Plaintiff's

incontestable federal trademark registration is not just reckless and inexplicable – it is willful

infringement and unfair competition.

2.      Specifically, Plaintiff has used its logo since at least as early as 1987 in

connection with musical recording goods, live musical performances, and related goods and

services, including clothing goods such as shirts and hats.  In June 2023, Supreme, a clothing

and skateboarding lifestyle brand, as part of a collaboration with Mobb Deep, began using its

logo on clothing goods, including t-shirts and hats. The similarities between the two marks,

particularly when used on clothing, have confused and are confusing the media and consumers

and are causing damage to Plaintiff's senior mark and brand.

3.      This is not the first time that Plaintiff has objected to Mobb Deep's use of a logo

substantially identical to Plaintiff's Mark.  Twice, most recently in 2003, Plaintiff previously

demanded that Mobb Deep cease use of its infringing logo, and Mobb Deep and its affiliates

complied.  In addition, immediately prior to the institution of this lawsuit, Plaintiff demanded

that Defendants cease use of their infringing logo and provide an accounting to Plaintiff of

sales of the infringing goods.  Defendants refused to comply with those demands.  Accordingly,

Plaintiff brings this action for trademark infringement, unfair competition and other relief arising under the trademark laws of the United States, specifically 15 U.S.C. § 1051 et seq. (hereinafter the "Lanham Act') and the laws of the State of New York.

## THE PARTIES

4.      Plaintiff Bush Baby Zamagate, Inc. is an entity organized and existing under the laws of New York with an address in Tarrytown, NY.

5.      Plaintiff is the owner of all intellectual property rights associated with the musical group Sick Of It All ("SOIA") that has been in existence since 1987.

6.      Chapter 4 Corp., d/b/a Supreme is an entity organized and existing under the laws of New York with an address of 62 King Street, 3rd Floor, New York, NY 10014.

7.      Kejuan Muchita Inc. is an entity organized and existing under the laws of New York with an address of 418 Broadway, Ste. R, Albany, NY 12207.  Upon information and belief, the CEO of KMI, an individual by the name of Kejuan Muchita, resides in New York, NY.

8.      The Executors of the Albert Jackson Johnson Estate has an address of c/o The Northstar Group, 240 West 35th Street, Suite 405, New York, NY 10001.

9.      Kejuan Muchita (a/k/a Havoc) and Albert Jackson Johnson (a/k/a Prodigy) were the two members of the hip hop duo by the name of Mobb Deep, which was formed in New York City in 1991.  Upon information and belief, KMI and the Jackson Estate are jointly responsible for all business and legal activities relating to Mobb Deep, including the acts complained of herein.

## JURISDICTION, VENUE AND STANDING

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because Plaintiff's claims arise under the trademark laws of the United States, 15 U.S.C. § 1051 et seq.  This Court also has supplemental jurisdiction over Plaintiff's claims that arise under the laws of the State of New York pursuant to 28 U.S.C. §§ 1338(b) and 1367.

11.     This Court has personal jurisdiction over Defendants because: (i) Plaintiff's claims arise in this judicial district; (ii) the Defendants are located within this judicial district; and (iii) each party does business in this judicial district.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arise in this judicial district, each party does business in this judicial district, witnesses and evidence are located within this judicial district, and the acts complained of herein have taken place in this judicial district.

13.     Plaintiff has standing to bring this action pursuant to 15 U.S.C. §§ 1114 and 1125(a) and the common laws of the State of New York.

## PLAINTIFF'S MARK

14.     Plaintiff is the owner of the well-known trademark and service mark



("Plaintiff's Mark"), which mark has been in use since 1987 in connection with SOIA's musical sound recordings, merchandise items (including clothing goods) and live performances ("Plaintiff's Goods and Services").

4

15.     Plaintiff is the owner of incontestable United States Trademark Registration No. 2,866,578 ("Plaintiff's Registration") covering Plaintiff's Mark in International Class 25 for *t-shirts, baseball hats, shorts, sweatshirts, wristbands*. Printouts from the United States Patent and Trademark Office's ("USPTO") online databases of Plaintiff's Registration are attached hereto as **Exhibit A**.

16.     Plaintiff's Mark is inherently distinctive for Plaintiff's Goods and Services.

17.     Because SOIA and Plaintiff have used Plaintiff's Mark in commerce for decades, Plaintiff's Mark has also acquired secondary meaning.

18.     By virtue of Plaintiff's extensive and continuous use of Plaintiff's Mark for thirty-five years, Plaintiff's Mark has come to be widely recognized by the public as identifying Plaintiff, SOIA, and Plaintiff's Goods and Services.

19.     As a result of the foregoing, in addition to Federal trademark rights, Plaintiff has common law rights in and to Plaintiff's Mark in connection with Plaintiff's Goods and Services dating back at least as early as 1987.

20.     Plaintiff, SOIA, and their predecessors-in-interest, affiliates, and licensees have invested a substantial amount of time, money, and other resources advertising, promoting, marketing, and publicizing Plaintiff's Goods and Services provided under Plaintiff's Mark. As a result of these substantial advertising, marketing, and promotional efforts, Plaintiff's Mark has acquired substantial consumer recognition and goodwill. Plaintiff's Mark has become an important source indicator that identifies the quality of Plaintiff's Goods and Services and SOIA as a whole. For all of the foregoing reasons, Plaintiff's Mark is an exceedingly valuable asset of Plaintiff.

**DEFENDANTS' INFRINGEMENT**

21.    Over thirty-five years after Plaintiff's commencement and substantial exclusive use of Plaintiff's Mark, subsequent to Plaintiff's Mark acquiring public recognition as identifying and distinguishing Plaintiff's Goods and Services from those of others, following the USPTO's issuance of Plaintiff's Registration, following Plaintiff's Registration achieving incontestable status, and following Plaintiff's prior objections to Mobb Deep regarding use of an infringing logo, in June 2023, Defendants began using the nearly identical mark



(the "Infringing Mark") in the United States and internationally in connection with numerous types of clothing goods as part of a collaboration between Supreme and Mobb Deep.

22.    The Infringing Mark is virtually identical to Plaintiff's Mark.  A side-by-side comparison of the respective marks is set forth below.

Plaintiff's Mark                     Infringing Mark

          

23.    The Infringing Mark is displayed on clothing goods, including, but not limited to, shirts and hats, sold by Supreme.

6

24.    The Infringing Mark is also displayed on Defendants' websites and in social media posts advertising the collaboration.

25.    Upon information and belief, Defendants are also selling merchandise bearing the Infringing Mark via third party retailers, including numerous third party retailers that are affiliated with, authorized by, or controlled by Supreme.

26.    Defendants' merchandise bearing the Infringing Mark is highly related and, in many cases, essentially identical to Plaintiff's Goods.   Examples of the parties' respective goods are depicted below:



| Plaintiff's Items | Defendants' Items |
|---|---|

7

27.     Defendants' goods and services provided under the Infringing Mark are directed toward the same class of consumers as Plaintiff's customers, such that Plaintiff and Defendants are unquestionably in competition with respect to their respective goods and services.

28.     Defendants' use of the essentially identical Infringing Mark is likely to cause confusion, mistake, or deception as to the source or origin of Defendants' goods and services.

29.     As a result of Defendants' use of the Infringing Mark in connection with goods that are identical to many of Plaintiff's Goods, consumers are likely to believe that Defendants' goods and services are provided by, sponsored by, endorsed by, approved by, licensed by, or in some other way legitimately connected to Plaintiff, which they are not.

30.     At least twice in the past, Mobb Deep has been advised that its adoption and use of Defendants' Mark infringed Plaintiff's Mark.   Upon information and belief, the first objection was made in or prior to 1997.  Most recently, in 2003, counsel for Plaintiff sent a letter, a copy of which is attached hereto as **Exhibit B**, objecting to Mobb Deep's anticipated use of Defendants' Mark in connection with sound recordings that Mobb Deep produced. Upon information and belief, Mobb Deep is still represented by one of the recipients of the letter attached hereto as Exhibit B, L. Londell McMillan.

31.     Third parties and media outlets have commented on the similarities between the marks.  By way of example, but not limitation, HypeBeast.com stated that Defendant's Mark was "borrowed from hardcore punk band Sick of It All – who, like Mobb Deep, is from Queens, New York." A copy of that article is attached hereto as **Exhibit C**.

32.     Defendants' acts complained of hereinabove are unlawful, willful, and knowingly performed with the intent and result of injuring Plaintiff.

8

33.     Defendants' continued use, marketing, and promotion of the Infringing Mark, whether directly or through their third party affiliated sellers, is likely to cause confusion, mistake, or deception as to the source of Defendants' goods and services.  As a result of Defendants' use of the essentially identical Infringing Mark in connection with goods and services that are identical or nearly identical to the goods and services Plaintiff provides, consumers are likely to believe that Defendants' goods and services are provided by, or sponsored by, or approved by, or licensed by, or affiliated with, or in some other way legitimately connected to Plaintiff, which they are not.

34.     As a result of Defendants' conduct, Plaintiff and its brand has been seriously and irreparably harmed, and, unless this Court enjoins Defendants' wrongful acts, Plaintiff will continue to suffer irreparable harm for which it has no adequate remedy at law.

## COUNT I

### FEDERAL TRADEMARK INFRINGEMENT

35.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as if they were set forth in full herein.

36.     Defendants, through the conduct described above, are providing in interstate commerce goods and services under a mark that is a colorable imitation of Plaintiff's registered mark, which is likely to cause confusion or mistake and/or to deceive in violation of the Lanham Act Section 32(1) (15 U.S.C. § 1114(1)).

37.     Upon information and belief, Defendants have committed such acts of infringement willfully and with full knowledge of Plaintiff's prior use and registration of, and rights in and to, Plaintiff's Mark.

38.     As a result of Defendants' acts of infringement, Plaintiff has suffered and will continue to suffer serious and irreparable harm for which there is no adequate remedy at law.

## COUNT II

### UNFAIR COMPETITION UNDER THE LANHAM ACT

39.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as if they were set forth in full herein.

40.     Defendants, through the conduct described above, are providing goods and services under a mark that is a colorable imitation of Plaintiff's protectable mark, which is likely to cause confusion or mistake and/or to deceive in violation of the Lanham Act Section 43(a) (15 U.S.C. § 1125(a)).

41.     Upon information and belief, Defendants have committed such acts of false designation of origin and false description and representation willfully and with full knowledge of Plaintiff's prior use and registration of, and common law rights in and to, Plaintiff's Mark.

42.     As a result of Defendants' acts of unfair competition, Plaintiff has suffered and will continue to suffer serious and irreparable harm for which there is no adequate remedy at law.

## COUNT III

### COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

43.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as if they were set forth in full herein.

44.     Plaintiff owns all right, title and interest in Plaintiff's Mark as described above, including all common law rights therein.

10

45.     Defendants' aforesaid acts constitute infringement of Plaintiff's rights in Plaintiff's Mark and tend to falsely describe or represent that Defendants' goods and services are provided by, or sponsored by, or approved by, or endorsed by, or licensed by, or affiliated with, or in some other way legitimately connected to Plaintiff and are of the same character, nature, and quality as the goods provided by Plaintiff, thereby damaging Plaintiff's reputation.

46.     Defendants' consumer-oriented conduct was and is directed at the public, was and is materially misleading to the public, has affected the public interest of New York, and has resulted in injury to consumers in New York.

47.     Defendants' aforesaid acts constitute acts of trademark infringement and unfair competition against Plaintiff under the common law of the State of New York, which acts have been committed knowingly and willfully and have injured Plaintiff in its trade and business.

48.     By reason of the aforesaid acts, Defendants have caused damage to Plaintiff and the goodwill associated with Plaintiff's Mark, as well as injury to the public.

49.     As a result of Defendants' acts of unfair competition, Plaintiff has suffered and will continue to suffer serious and irreparable harm for which there is no adequate remedy at law.

### COUNT IV

### DILUTION IN VIOLATION OF NEW YORK GENERAL BUSINESS LAW

50.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as if they were set forth in full herein.

51.     Plaintiff is the owner of Plaintiff's Mark.

52.     Defendants have used, are using, and have caused others to use the confusingly similar Infringing Mark without Plaintiff's authorization.

11

53.    Defendants' unauthorized uses of the Infringing Mark have impaired and damaged and are likely to impair and damage the distinctiveness of Plaintiff's Mark by causing the public to no longer associate the distinctive Plaintiff's Mark exclusively with Plaintiff.

54.    Defendants' unauthorized use is also likely to tarnish the reputation of Plaintiff and the goodwill Plaintiff has developed in Plaintiff's Mark.

55.    Defendants' conduct was and is knowing, deliberate, willful, and in bad faith and done with the intent to trade on the goodwill and reputation of Plaintiff and Plaintiff's Mark, to impair the distinctiveness of Plaintiff's Mark, and to deceive consumers into believing that Plaintiff is connected with Defendants' products.

56.    Defendants' actions, as stated above, have caused and will continue to cause a likelihood of injury to Plaintiff's business reputation in violation of New York General Business Law § 360-l.

57.    Unless enjoined by this Court, Defendants wrongful acts will continue and Plaintiff will continue to suffer irreparable harm for which it has no adequate remedy at law.

## COUNT V

### INJUNCTION

58.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as if they were set forth in full herein.

59.    Plaintiff will be irreparably harmed if Defendants are not enjoined from using the Infringing Mark in connection with the provision of any goods and services.

60.    Customers and potential customers of Plaintiff's and Defendants' goods and services will be confused if Defendants are not enjoined from using the Infringing Mark.

61.     Plaintiff does not have an adequate remedy at law for Defendants' ongoing misconduct, and entry of an injunction will serve the public interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment in its favor and against Defendants as follows:

1.      That Defendants and each of their officers, agents, servants, distributors, affiliates, employees, attorneys, members, and representatives and all those in privity or acting in concert with Defendants, and each of them, be permanently enjoined and restrained from, directly or indirectly:

(a)     Using the Infringing Mark or any other mark or marks confusingly similar thereto, alone or in combination with other words, names, styles, titles, designs, or marks in connection with the provision of any goods and services;

(b)     Using in any other way any other marks or designations so similar to the aforesaid Plaintiff's Mark as to be likely to cause confusion, mistake or deception;

(c)     Falsely designating the origin, sponsorship, or affiliation of the Defendants' goods or services in any manner;

(d)     Otherwise competing unfairly with Plaintiff in any manner;

(e)     Using any words, names, styles, designs, titles, designations, or marks which create a likelihood of injury to the business reputation of Plaintiff and the goodwill associated therewith;

(f)     Using any trade practices whatsoever including those complained of herein, which tend to unfairly compete with or injure Plaintiff's business and goodwill pertaining thereto;

13

(g)     Using any trade practices whatsoever including those complained of herein, which tend to deceive their intended audience; and

(h)     Continuing to perform in any manner whatsoever any of the acts complained of in this Complaint.

2.     That the Defendants be required to pay to Plaintiff compensatory damages for the injuries sustained by Plaintiff in consequence of the unlawful acts alleged herein and that such damages be trebled pursuant to 15 U.S.C. § 1117 because of the willful and unlawful acts as alleged herein.

3.     That the Defendants be required to account for and pay over to Plaintiff all gains, profits and advantages derived from the unlawful activities alleged herein.

4.     That Defendants be required to deliver for destruction all merchandise, stationery, signs, advertisements, promotional flyers, cards, brochures, promotional materials, and any other hard copy or written materials which bear the Infringing Mark or any other mark or marks confusingly similar thereto, alone or in combination with other words, names, styles, titles, designs, or marks, together with all plates, molds, matrices and other means and materials for making or reproducing the same.

5.     That Defendants be required to remove any and all online use of the Infringing Mark or any other mark or marks confusingly similar thereto, alone or in combination with other words, names, styles, titles, designs or marks, including via any and all of their websites, social media accounts or otherwise, and that Defendants be required to take steps necessary to remove any use of the Infringing Mark, or any other mark or marks confusingly similar thereto, alone or in combination with other words, names, styles, titles, designs or marks, that is associated with any of Defendants' advertised goods or services on any third party website or online source.

14

6.      That the Defendants be required to pay to Plaintiff all of its litigation expenses, including but not limited to reasonable attorneys' fees and the costs of this action.

7.      That Plaintiff be awarded such other and further relief as the Court may deem just and proper.

> CHIESA SHAHINIAN & GIANTOMASI PC
> 11 Times Square, 34th Floor
> New York, NY 10036
> 973.325.1500
> ajremore@csglaw.com
> *Attorneys for Plaintiff Bush Baby Zamagate, Inc.*
>
> By:     /s/ *Abigail J. Remore* /
>         ABIGAIL J. REMORE

Dated:  October 11, 2023
        New York, NY


## JURY DEMAND

Plaintiff demands trial by jury of all claims and defenses in this action so triable.

> CHIESA SHAHINIAN & GIANTOMASI PC
> 11 Times Square, 34th Floor
> New York, NY 10036
> 973.325.1500
> ajremore@csglaw.com
> *Attorneys for Plaintiff Bush Baby Zamagate, Inc.*
>
> By:     /s/ *Abigail J. Remore* /
>         ABIGAIL J. REMORE

Dated:  October 11, 2023
        New York, NY

15

# EXHIBIT A

**Int. Cl.: 25**

**Prior U.S. Cls.: 22 and 39**

Reg. No. 2,866,578

## United States Patent and Trademark Office

Registered July 27, 2004

### TRADEMARK
### PRINCIPAL REGISTER



BUSH BABY ZAMAGATE, INC. (NEW YORK CORPORATION)
C/O LOU KOLLER, 950 BROADWAY
BAYONNE, NJ 07002

FOR: T-SHIRTS, JACKETS, BASEBALL HATS, KNIT HATS, SHORTS, SWEATSHIRTS, JACKETS, WIND RESISTANT JACKET, VARSITY JACKETS, WRISTBANDS, BELTS AND HEADBANDS, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 9-1-1987; IN COMMERCE 9-1-1987.

SER. NO. 78-192,351, FILED 12-9-2002.

ROBERT C. CLARK JR., EXAMINING ATTORNEY

**Generated on:** This page was generated by TSDR on 2023-10-11 16:54:03 EDT

**Mark:**



| | | | |
|---|---|---|---|
| **US Serial Number:** | 78192351 | **Application Filing Date:** | Dec. 09, 2002 |
| **US Registration Number:** | 2866578 | **Registration Date:** | Jul. 27, 2004 |
| **Register:** | Principal | | |
| **Mark Type:** | Trademark | | |

**TM5 Common Status Descriptor:**

LIVE/REGISTRATION/Issued and Active

The trademark application has been registered with the Office.

**Status:** The registration has been renewed.

**Status Date:** Oct. 30, 2013

**Publication Date:** May 04, 2004

# Mark Information

| | |
|---|---|
| **Mark Literal Elements:** | None |
| **Standard Character Claim:** | No |
| **Mark Drawing Type:** | 2 - AN ILLUSTRATION DRAWING WITHOUT ANY WORDS(S)/ LETTER(S)/NUMBER(S) |
| **Color(s) Claimed:** | Color is not claimed as a feature of the mark. |
| **Design Search Code(s):** | 04.05.01 - Dragons; Griffons |

# Goods and Services

**Note:**
The following symbols indicate that the registrant/owner has amended the goods/services:
- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

| | | | |
|---|---|---|---|
| **For:** | t-shirts,[ jackets, ] baseball hats,[ knit hats, ] shorts, sweatshirts,[ jackets, wind resistant jacket, varsity jackets, ] wristbands[, belts and headbands ] | | |
| **International Class(es):** | 025 - Primary Class | **U.S Class(es):** | 022, 039 |
| **Class Status:** | ACTIVE | | |
| **Basis:** | 1(a) | | |
| **First Use:** | Sep. 01, 1987 | **Use in Commerce:** | Sep. 01, 1987 |

# Basis Information (Case Level)

| | | | |
|---|---|---|---|
| **Filed Use:** | Yes | **Currently Use:** | Yes |
| **Filed ITU:** | No | **Currently ITU:** | No |
| **Filed 44D:** | No | **Currently 44E:** | No |
| **Filed 44E:** | No | **Currently 66A:** | No |

| | | |
|---|---|---|
| **Filed 66A:** No | **Currently No Basis:** No | |
| **Filed No Basis:** No | | |

## Current Owner(s) Information

**Owner Name:** Bush Baby Zamagate, Inc.

**Owner Address:** 62 Riverview Ave
c/o Chiesa Shahinian & Giantomasi PC
Tarrytown, NEW YORK UNITED STATES 10591

**Legal Entity Type:** CORPORATION  **State or Country** NEW YORK
**Where Organized:**

## Attorney/Correspondence Information

### Attorney of Record

**Attorney Name:** Peter Nussbaum  **Docket Number:** 9905/1/2

**Attorney Primary** pnussbaum@csglaw.com  **Attorney Email** Yes
**Email Address:**  **Authorized:**

### Correspondent

**Correspondent** Peter Nussbaum
**Name/Address:** Chiesa Shahinian & Giantomasi PC
105 Eisenhower Parkway
Roseland, NEW JERSEY UNITED STATES 07068

**Phone:** 973-530-2025  **Fax:** 973-325-1501

**Correspondent e-** pnussbaum@csglaw.com  **Correspondent e-** Yes
**mail:** trademarks@csglaw.com  **mail Authorized:**
tmdocketing@csglaw.com

**Domestic Representative - Not Found**

## Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Aug. 09, 2023 | TEAS SECTION 8 & 9 RECEIVED | |
| Jul. 27, 2023 | COURTESY REMINDER - SEC. 8 (10-YR)/SEC. 9 E-MAILED | |
| Jan. 26, 2023 | TEAS CHANGE OF CORRESPONDENCE RECEIVED | |
| Jan. 26, 2023 | ATTORNEY/DOM.REP.REVOKED AND/OR APPOINTED | |
| Jan. 26, 2023 | TEAS REVOKE/APP/CHANGE ADDR OF ATTY/DOM REP RECEIVED | |
| Aug. 19, 2015 | APPLICANT/CORRESPONDENCE CHANGES (NON-RESPONSIVE) ENTERED | 88888 |
| Aug. 19, 2015 | TEAS CHANGE OF OWNER ADDRESS RECEIVED | |
| May 15, 2015 | ATTORNEY/DOM.REP.REVOKED AND/OR APPOINTED | |
| May 15, 2015 | TEAS REVOKE/APP/CHANGE ADDR OF ATTY/DOM REP RECEIVED | |
| Oct. 30, 2013 | NOTICE OF ACCEPTANCE OF SEC. 8 & 9 - E-MAILED | |
| Oct. 30, 2013 | REGISTERED AND RENEWED (FIRST RENEWAL - 10 YRS) | 68502 |
| Oct. 30, 2013 | REGISTERED - SEC. 8 (10-YR) ACCEPTED/SEC. 9 GRANTED | 68502 |
| Oct. 23, 2013 | REGISTERED - COMBINED SECTION 8 (10-YR) & SEC. 9 FILED | 68502 |
| Oct. 30, 2013 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | 68502 |
| Oct. 23, 2013 | TEAS SECTION 8 & 9 RECEIVED | |
| May 11, 2010 | REGISTERED - SEC. 8 (6-YR) ACCEPTED & SEC. 15 ACK. | 68502 |
| May 11, 2010 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | 68502 |
| Apr. 27, 2010 | TEAS SECTION 8 & 15 RECEIVED | |
| Apr. 23, 2010 | APPLICANT/CORRESPONDENCE CHANGES (NON-RESPONSIVE) ENTERED | 88888 |
| Apr. 23, 2010 | TEAS CHANGE OF OWNER ADDRESS RECEIVED | |
| Jul. 27, 2004 | REGISTERED-PRINCIPAL REGISTER | |
| May 04, 2004 | PUBLISHED FOR OPPOSITION | |
| Apr. 14, 2004 | NOTICE OF PUBLICATION | |
| Feb. 10, 2004 | APPROVED FOR PUB - PRINCIPAL REGISTER | |
| Dec. 17, 2003 | CORRESPONDENCE RECEIVED IN LAW OFFICE | |
| Dec. 17, 2003 | PAPER RECEIVED | |

Jun. 18, 2003   NON-FINAL ACTION MAILED
Jun. 14, 2003   NON-FINAL ACTION E-MAILED
Jun. 14, 2003   ASSIGNED TO EXAMINER                                                    59500

## TM Staff and Location Information

**TM Staff Information - None**

**File Location**

**Current Location:**  GENERIC WEB UPDATE                    **Date in Location:**  Oct. 30, 2013



United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Contacts | eBusiness | eBiz alerts | News

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Wed Oct 11 03:32:22 EDT 2023*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout  Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TSDR | ASSIGN Status | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*



| | |
|---|---|
| **Goods and Services** | IC 025. US 022 039. G & S: t-shirts,[ jackets, ] baseball hats,[ knit hats, ] shorts, sweatshirts,[ jackets, wind resistant jacket, varsity jackets, ] wristbands[, belts and headbands ]. FIRST USE: 19870901. FIRST USE IN COMMERCE: 19870901 |
| **Mark Drawing Code** | (2) DESIGN ONLY |
| **Design Search Code** | 04.05.01 - Dragons ; Griffons |
| **Serial Number** | 78192351 |
| **Filing Date** | December 9, 2002 |
| **Current Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | May 4, 2004 |
| **Registration Number** | 2866578 |
| **Registration Date** | July 27, 2004 |
| **Owner** | (REGISTRANT) Bush Baby Zamagate, Inc. CORPORATION NEW YORK 62 Riverview Ave c/o Chiesa Shahinian & Giantomasi PC Tarrytown NEW YORK 10591 |
| **Attorney of Record** | Peter Nussbaum |
| **Description of Mark** | Color is not claimed as a feature of the mark. |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20131030. |
| **Renewal** | 1ST RENEWAL 20131030 |
| **Live/Dead Indicator** | LIVE |

10/11/23, 4:55 PM

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP |

| HOME | SITE INDEX | SEARCH | eBUSINESS | HELP | PRIVACY POLICY

# EXHIBIT B

Case 1:23-cv-08946-KPF   Document 19-1   Filed 12/15/23   Page 24 of 35
CONTINUE FROM PREVIOUS PAGE    001
Case 1:23-cv-08946   Document 1-2   Filed 10/11/23   Page 2 of 5

April 23, 2003

**VIA TELECOPY AND FEDERAL EXPRESS**

Jonathan Lieberman, Esq.
L. Londell McMillan PC
200 West 57th St., Suite 200
New York, N.Y. 10019

Re:   Sick of it All "Dragon" Trademark Infringement

Dear Mr. Lieberman:

As we discussed, this firm represents the performing and recording group Sick of it All and their wholly owned corporation Bush Baby Zamagate, Inc. (collectively referenced herein as "SOIA"). SOIA is the owner of a trademark and service mark comprised of a stylized dragon design, which has continuously appeared on the band's recordings, merchandise and in advertising materials since at least as early 1987. SOIA is the owner of United States trademark application Serial Numbers 78/192,354 in International Class 9 for musical sound recordings and 78/192,351 in International Class 25 for various forms of clothing merchandise.

SOIA's dragon design trademark is well known and widely recognized throughout the United States and the rest of the world. As you are aware, SOIA has released numerous records upon which the dragon design mark has been prominently affixed through several labels including Revelation Records, Relativity Records (now owned by Sony), East/West and Fat Wreck Chords. The band has toured extensively throughout the United States and elsewhere throughout the world. The advertising and promotional materials for these shows have prominently featured the SOIA dragon design trademark. Millions of dollars of SOIA recordings and merchandise featuring the SOIA dragon design trademark have been sold. SOIA released its most recent album in August 2002 and is currently in the studio recording an album to be released later this year. A copy of the album cover of one of SOIA's recent releases featuring the dragon design trademark is attached hereto as Exhibit A.

SOIA just learned that Mobb Deep intends to utilize a virtually identical, and thus infringing, dragon design in connection with soon to be released sound recordings produced by Mobb Deep of the recording artist known as NOYD. A copy of the advertisement on which this is advertised is included as Exhibit B hereto. An insert included with the Mobb Deep album "Free Agents – The Murda Mix Tapes", which was released yesterday by Landspeed Records (LSR 922) contains an insert that utilizes a virtually identical dragon design to announce the forthcoming NOYD release.

Jonathan Lieberman, Esq.
April 23, 2003
Page 2

Based upon the virtually identical nature of the respective dragon designs and the identical nature of the goods and services in connection with which the respective marks are utilized, Mobb Deep's (and/or NOYD's and Landspeed's) use of the dragon design trademark has created a likelihood of confusion whereby consumers will mistakenly believe that Mobb Deep's (and/or NOYD's and Landspeed's) goods and services emanate from or are otherwise associated with, sponsored and/or approved by SOIA. The fact that Sick of it All and Mobb Deep have previously performed on a joint recording further lends to this confusion. The resulting confusion and dilution will irreparably harm SOIA's goodwill and reputation in the marketplace and will otherwise damage SOIA's business interests. Mobb Deep's and/or NOYD's and Landspeed's use of the dragon design amounts to common law trademark infringement and unfair competition under Section 43(a) of the Lanham Act.

This is, unfortunately, not the first time that SOIA has been forced to take action against Mobb Deep regarding the use of an infringing dragon design. Several years ago, a similar notice was sent to Mobb Deep and their record label at the time (RCA) that was met with compliance by both the group and the label. We anticipate that your clients will likewise comply with our demands that they immediately: (a) cease and desist from any and all distribution, advertisement, promotion and sales of any and all Mobb Deep and/or NOYD products bearing the dragon design trademark; (b) collect and turn over to our clients the remaining inventory of such items; (c) provide our clients with a full accounting of all sales of such items, as well as the documentation supporting such accounting as well as information regarding all advertising and promotional materials which utilize the dragon design trademark; (d) provide a copy of this letter to NOYD or NOYD's counsel and provide us with contact information for NOYD or NOYD's counsel and (e) pay SOIA damages that are not yet determined.

Should you wish to discuss this matter, please call me. If we do not hear from you by Wednesday, April 30, 2003, we will assume that you have no desire to amicably resolve this matter and will proceed accordingly. The foregoing is without prejudice to our clients' rights and remedies nothing contained herein shall be deemed a waiver of any such rights and remedies, whether at law or equity, all of which are hereby expressly reserved.

Sincerely yours,

David J. Stein

cc:     Armand Majidi (via e-mail w/ exhibits)
        Peter Nussbaum, Esq. (via telecopy w/ exhibits)
        Jay Quatrini, Esq. (via telecopy w/ exhibits)

Exhibit A



Case 1:23-cv-08946-KPF   Document 19-1   Filed 12/15/23   Page 27 of 35
04/23/2003  16:02   12125293117           DAVID J. STEIN, ESQ.                         PAGE  04/04
Case 1:23-cv-08946   Document 1-2   Filed 10/11/23   Page 5 of 5

Exhibit B



# EXHIBIT C

☰ HYPEBEAST    LATEST   SECTIONS   VIDEOS   BRANDS   MAGAZINE   SHOP          ⊕ GLOBAL ⌄   FOLLOW   ☾   ⊙   ☺   Q

## Supreme Summer 2023 Tees

A collaboration with Mobb Deep, the return of the Motion Logo graphic and more.



Fashion

Jun 21, 2023

11,425 Hypes

8 Comments

TEXT BY
Ross Dwyer

SHARE THIS ARTICLE

🔗 Link
🐦 Tweet
f Share
✉ Email
••• More

IN THIS ARTICLE



Supreme
Streetwear Label Founded by James Jebbia
Rank 1

Following a recent collection with Tyshawn Jones' Hardies Hardware, Supreme is back with their Summer 2023 tee collection. Consisting of seven styles in total (each available in multiple colors), the tee assortment's highlights include a brand-new collaboration with Mobb Deep as well as the return of the brand's classic Motion Logo.

The Mobb Deep tee salutes "Drop A Gem On 'Em," a memorable diss track aimed at Tupac from 1996's Hell On Earth, the group's third studio album. "Drop A Gem On 'Em," recorded in response to Tupac mentioning Mobb Deep member Prodigy's lifelong battle with sickle cell anemia on 1995's legendary "Hit Em Up." The song's title is displayed prominently on the rear of the shirt, while the front features an extra-large tribal tattoo-style dragon logo that appeared on the DJ vinyl for "Drop A Gem On 'Em" and, later, graced the cover of 2006's Life of the Infamous: The Best of Mobb Deep, a "greatest hits" album. The graphic, which Supreme has previously used for one of the SS23 collection's five-panel hats, is dubbed the "Alleyway Crew" dragon, and was borrowed from hardcore punk band Sick of It All — who, like Mobb Deep, is from Queens, New York. Supreme, of course, is no stranger to collaborating with Mobb Deep: the late Prodigy appeared on a photo tee in 2011, was saluted on an illustrated tee in the SS18 collection and had his H.N.I.C. album honored by the brand in the SS21 collection as well.

Apart from this full fan-service graphic, the other key style from the collection is the return of the Motion Logo. Inspired by the title sequence of classic 1990 crime film Goodfellas, the "Motion Logo" was first introduced on tees, skate decks, a lighter and stickers in 1996. Since then it's appeared on everything from hoodies to long-sleeve tees and even a Vans collaboration (FW16), but last appeared on short-sleeve tees in the SS20 collection and has been used heavily in the SS23 collection as well.

Besides these two tees, the collection also boasts a graphic that repurposes the cover of London-based alt rock band Suede's eponymous 1993 debut album by going to its source material: the album cover showed two androgynous individuals kissing, but the full photo it was taken from (and is displayed here) debuted in a 1991 book called Stolen Glances: Lesbians Take Photographs. The original photo was taken by Tee Corinne, who demanded that Suede cropped the photo to protect the identities of its subjects. Now, 30 years later, Supreme is giving the photo its full moment in the spotlight. There's also a crown-adorned logo tee, a playful collage tee that includes everything from cigarettes to half-eaten bananas, doughnuts and cigarette packs, a and hand-drawn graphic tee of three silhouettes that looks like it could have come from the mind of Futura.

The Supreme Summer 2023 tee collection will release globally via the brand's webstore at 11 AM EDT on June 22, then touch down in Japan at 11 AM JST on June 24.

SUPREME    MOBB DEEP

Shop on HBX






Acne Studios
Short Sleeve Check Shirt
Shop Now

GREG LAUREN
Brown Split Boxy Shirt
Shop Now

GREG LAUREN
ARMY FRAGMENT HOODIE
Shop Now

Nike
Nike Terminator Low
Shop Now

Spotlights



Hypebeast Visits: Jordss and the
Places That Keep Her Grounded with
size? and The North Face
Presented By size?


Has Fashion Taken a Step
Back On the Quest For
Diversity?


Take a Look at Josh
Denzel's Debut NBA
Collection
Presented By Primark


Quavo and True Religion
Go Way Back



8 Comments

G    Join the discussion...

LOG IN WITH          OR SIGN UP WITH DISQUS ⓘ

**HYPEBEAST**       Name

                    Email

                    Password

Please access our Privacy Policy to learn what personal data Disqus collects and your choices about how it is used. All users of our service are also subject to our Terms of Service.

                                                                    →

♡    Share                                        Best  Newest  Oldest

**r.**                                                      —  ⚑
4 months ago
lmao, i can see why their sales are dropping
    5    0 · Reply · Share ›

**Class of 1994**                                           —  ⚑
4 months ago
Box logo ever coming back?
    1    0 · Reply · Share ›

R   **Rupert**                                              —  ⚑
4 months ago
They make it look so hard to design a t-shirt. Give a couple of skaters a shot and they could be something worth buying again
    1    0 · Reply · Share ›

G   **GramWeight**                                          —  ⚑
4 months ago
I like the Sick Of It All shirt.
    1    0 · Reply · Share ›

T   **Tartarus**                                            —  ⚑
4 months ago
WTF happened to Supreme? We aint axed for this. lol
    0    0 · Reply · Share ›

**copperhead** ✓Verified                                    —  ⚑
4 months ago
I can't believe how fast they deliver and you can use paypal
    0    0 · Reply · Share ›

F   **FUN*GGAS**                                            —  ⚑
4 months ago
Save those tacky designs and just keep dropping the Supreme box logo t shirt
    0    0 · Reply · Share ›

**Jared The Feeder**                                        —  ⚑
4 months ago   edited
still holdin onto those motion logos for dear life
    0    0 · Reply · Share ›

Subscribe    Privacy    Do Not Sell My Data


**What To Read Next**



Fashion
**Supreme Fall 2023 Tees**
Featuring nine new graphic T-shirt styles.
By HB Team / Oct 3  2023

                                    6,946 Hypes    7 Comments

Fashion
**Supreme Spring 2023 Tees**
Featuring team-ups with Tamagotchi and 'Ronin,' the return of the classic Arabic logo tee and more.
By HB Team / Apr 18  2023



10,539 Hypes    5 Comments

Fashion

## Supreme Reveals Summer 2023 Sunglasses Collection

Made in Italy, the range includes five anti-reflective styles.

By HB Team / Jun 27, 2023



5,103 Hypes    1 Comments

Fashion

## Supreme Fall/Winter 2023 Full Collection

Featuring new iterations of its signature hoodies, sweaters and weather-ready outerwear pieces.

By Joyce Li / Aug 14, 2023



46,337 Hypes    23 Comments

Entertainment

## Watch A24's First Official 'Priscilla' Teaser

The biopic is directed and written by Sophia Coppola.

By HB Team / Jun 21, 2023



6,471 Hypes    2 Comments

Footwear

## Nike Honors Its Annual Summer Streetball Tournament With the KD 16 "NY vs NY"

Regal accents pop up across the Swoosh logos, "NY vs. NY" tongue badges and "Easy" heel embellishments.

By HB Team / Jun 21, 2023



5,654 Hypes    1 Comments

Fashion



### Key Looks From Pharrell's First LV Runway

Uniting the luxury house's signature codes with contemporary touches.

By HB Team / Jun 21, 2023



10,316 Hypes    0 Comments

Footwear

### Action Bronson's New Balance 990v6 "Lapis Lazuli" Is Releasing

Denim-colored overlays and two-toned midsoles arrive on the rapper's next team-up.

By HB Team / Jun 21, 2023



143,434 Hypes    2 Comments

Tech

### Bang & Olufsen Continue Atelier Editions Series, Debuting Limited-Edition Green Speaker and Wireless Earbuds

Dropping via the Danish brand's website in extremely limited quantities.

By HB Team / Jun 21, 2023



2,527 Hypes    0 Comments

Fashion

### You Can Now Personalize Your Own Balenciaga Shirt

Exclusively being offered at the brand's London location.

By HB Team / Jun 21, 2023



2,672 Hypes    2 Comments

Tech

### Instagram Now Allows Users To Download Reels

Available only for content published by public accounts.

By HB Team / Jun 21, 2023



  

3,017 Hypes    2 Comments




Fashion

## Christopher Kane Is Closing His Namesake Label

The company has appointed licensed insolvency practitioners to close out operations, according to reports.

By HB Team · Jun 21, 2023



1,214 Hypes    0 Comments

Footwear

## Jordan Brand Officially Reveals the Jordan Luka 2

The Slovenian All-Star's new signature is designed to complement his talent for creating separation on the court.

By HB Team · Jun 21, 2023



6,365 Hypes    4 Comments

Music

## Ballantine's Scotch Whisky Unveils Recipients of its 2023 True Music Fund

Supporting grassroots music communities.

Presented by Ballantine's · Jun 21, 2023



1,176 Hypes    0 Comments

More ▾

Sections
Fashion
Footwear
Music
Art
Tech
Automotive
Entertainment
Design
Food & Beverage
Gaming
Watches

More
Magazine
Radio
Hypebeast100
Drops
Videos

Brands
Brand Ranking
Brand Directory
HypeIndex™

Store
Men
Women
Life
Archives
Drops
Sale

Elsewhere
Hypebeast
HypeArt
Hypebae
HBX

Hypebeast Ltd.
About Us
Corporate News
Investor Relations
Contact Us
Advertising
Jobs

Subscribe to Our Newsletter
Email Address

Download Our App

Follow Us

6/7

Sports

2023 Hypebeast Limited, All Rights Reserved.   Hypebeast® is a registered trademark of Hypebeast Hong Kong Ltd.   Terms & Conditions   |   Privacy Policy   |   GDPR   |   Investment Disclaimer

Global